[Crim. No. 1020.   Third Appellate District.—April 21, 1928.]

THE PEOPLE, Respondent, v. DANIEL WEBSTER BRYAN et al., Defendants; HARRY A. PIERCE, Appellant.

Harry Donnelly and Ernest Spagnoli for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

JAMISON, J., *pro tem.*—Defendant and appellant Harry A. Pierce, *alias* H. A. Rogers, was jointly charged with Daniel Webster Bryan with the crime of robbery by an information filed with the district attorney of Shasta County and upon their trial upon said charge Bryan was found guilty of robbery in the first degree and Pierce was found guilty of robbery in the second degree. From the judgment rendered thereon Pierce has appealed.

Briefly stated, the facts surrounding the said robbery are about as follows: On the evening of November 9, 1927,

Aaron C. Benjamin spent a considerable part of his time in the poolroom of Lee and McKee in Redding, engaging in card playing. During that time and when he left for home shortly after 1 o'clock A. M. on the 11th of November, he had several hundred dollars on his person, at least a portion of which was open to the view of the people collected in said poolroom.

Benjamin, accompanied by a neighbor named Fish, left said poolroom shortly after 1 o'clock on the morning of November 10th, 1927, and after getting a lunch in a near-by cafe they left Redding, traveling north on a public road known as the Pacific Highway, Benjamin in front in his own car and Fish following in a car of his own. When Benjamin had traveled about eight miles from Redding on said highway he was overtaken by defendants, who were traveling in a Pontiac coupe. Defendants were each armed with a revolver and after compelling Benjamin to stop his car, they forced him out of it and proceeded to rob him of his purse and keys. They did not succeed in getting the bulk of his money for the reason that the moment he realized he was about to be robbed, he threw it out on the roadside and it escaped their search.

Defendants, believing that the purse they had taken from Benjamin contained all his money, permitted him, after a short delay, to proceed on his way. Fish, who was following Benjamin, passed the defendants and Benjamin just after they had stopped Benjamin, and as he passed saw one of the defendants pointing a revolver at him. Fish did not stop, but continued on to his home about two miles from the scene of the hold-up. When defendants permitted Benjamin to depart he went on to the home of Fish and he and Fish telephoned Sheriff Sublett at Redding the facts of the hold-up, giving him the number of the car defendants were using. Sublett immediately got in touch with his deputy Stevenson and together they began a search for defendants.

About 2 o'clock on the morning of November 10, 1927, they discovered defendants, who had stopped the car in an alley in Redding. When approached by the officers Bryan had a revolver in his hand and upon command of the sheriff and after some hesitation he dropped it and surrendered. The officers arrested both of the defendants

and later in the day appellant made a confession to the sheriff in which he admitted that he and Bryan had both participated in the robbery of Benjamin and were each armed with a revolver. Benjamin identified Bryan as the one who pointed the gun at him and told him to get out of the car. He did not recognize Pierce, but said that this one whom he did not recognize had a gun but did not point it at him; however, he was the one who took the purse from Benjamin.

Appellant was sworn as a witness and testified, in substance, that he first met his co-defendant Bryan in Salinas about September 15, 1927, where appellant was working, that on November 6th he and Bryan left Salinas, traveling in a Pontiac coupe owned by appellant and after stopping at several places looking for work, finally arrived at Redding in the evening of November 9th.

At Bryan's suggestion they went to the poolroom of Lee and McKee and after remaining there an hour or so Bryan called appellant outside and told him to go back in the poolroom and watch a certain man whom they had seen playing cards in there, and who appellant later learned was Benjamin, until he "cashed in" as he, Bryan, wanted to borrow money from him. Appellant did as required and after Benjamin "cashed in," appellant returned to Bryan and informed him that Benjamin had four or five hundred dollars. That Bryan thereupon informed appellant that he had not intended to try to borrow any money from Benjamin but did intend to follow and rob him and that appellant must drive him and follow Benjamin so that he, Bryan, could rob him.

Appellant stated that he refused to do this for a long time, but that after Bryan insisted and made threats he finally consented, but with the intention of not overtaking Benjamin or taking any part in the robbery; that he and Bryan followed Fish and Benjamin in appellant's car, appellant driving, and when they had gone about a mile appellant stopped his car and said he was out of gas; that Bryan got out of the car and looked at the gas register and then got back in the car and shoved a gun against appellant's body and threatened to shoot him and thereby forced appellant to speed up and overtake Benjamin, and that there-

after everything he did in assisting in said robbery was done through the fears excited by the threats of Bryan.

The first point urged by appellant for a reversal of this case is that the court abused its discretion in refusing his demand for a separate trial.

Section 1098 of the Penal Code provides that when two or more defendants are jointly charged with the commission of a crime they must be tried jointly unless the court orders separate trials and that in its discretion the court may order a separate trial for one or more of the defendants.

We cannot see from the showing made by the appellant that there was any abuse of discretion by the trial court in refusing appellant a separate trial.

The next point raised by appellant was that the trial court refused to allow counsel to examine talesmen. Section 1078 of the Penal Code, as amended by act of the legislature in 1927 [Stats. 1927, p. 1039], reads as follows:

"It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury. He shall permit reasonable examination of prospective jurors by counsel for the people and for the defendant."

It does not appear that the trial court refused to permit Mr. Spagnoli, the attorney for appellant, to examine prospective jurors. The court merely held that some two or three questions propounded to the jury by Mr. Spagnoli were questions of law to be determined by the court and submitted to the jury by way of instructions.

Appellant's next contention is that the trial court erred in the admission and rejection of evidence. He calls attention to the alleged refusal of the court to permit appellant, when testifying as a witness in his own behalf, to state whether or not he followed Benjamin with the intention of committing a robbery. An inspection of the reporter's transcript shows that the court did not so rule, but, on the contrary, shows that appellant was permitted to answer the question.

We find no error in the admission or rejection of testimony.

Appellant assigns as error the refusal of the court to permit appellant to prove that his character for truth, honesty and integrity was good. C. W. Edmindsen, a wit-

ness for defendant, testified that he had known appellant for the past ten years. He was then asked by Mr. Spagnoli, appellant's attorney, if he knew the general reputation of appellant in the community in which he lived for truth, honesty, integrity, peace, and quiet. The witness answered, "Very good." The court struck out this answer and stated that a witness is presumed to speak the truth, that this presumption goes with him, until it is attacked by the other side to show that his reputation for truth, honesty and integrity is bad; when so attacked, he may rebut it, but that appellant has the right to show his reputation for peace and quiet.

The question propounded by plaintiff to said witness was objectionable in that it included truth with the other traits of character. ■ It is a well-recognized rule that the reputation of a witness for truth cannot be supported by evidence that it is good until it has been attacked. (*People* v. *Cowgill*, 93 Cal. 596 [29 Pac. 228].) Had the character for truth been eliminated from the question the trial court would have erred in refusing to permit the witness to answer it.

■ It is claimed that the court erred in refusing certain instructions requested by appellant defining assault, that assault is included in a charge of robbery, and that the jury could find appellant guilty of assault.

The evidence in this case conclusively shows that appellant was guilty of robbery, unless it was found that appellant participated in said robbery through coercion as provided by subdivision 8 of section 26 of the Penal Code.

■ Where the evidence all tends to prove that the defendant, if guilty at all, is guilty of robbery the jury may be instructed that their verdict should be guilty or not guilty. (*People* v. *O'Brien*, 88 Cal. 483 [26 Pac. 362].)

■ There certainly was no error in the refusal of the court to permit the attorney for appellant to argue to the jury the question of appellant's sanity. No plea of not guilty by reason of insanity had been made by appellant and no evidence whatever that his mind was otherwise than normal had been produced. Appellant admitted that he participated in the robbery with a loaded pistol in his hand. His only defense was that he did this by reason of the threats and menaces of his co-defendant, which caused him

to believe that his life would be endangered if he refused. He testified at the trial that when his co-defendant said to him that he was going to rob Benjamin and that appellant must drive him to where he could commit the robbery, appellant refused for a long time, but that he finally consented, after his co-defendant had insisted and made threats. When asked what threats were made he said "he didn't know, that he would get him later and stuff like that." In his affidavit filed with motion for a separate trial, he did not make any mention of any threats when his co-defendant insisted upon his taking his car and following Benjamin for the purpose of robbing him. Appellant there stated "that at his (codefendant's) insistent requests I finally consented to drive him out and follow Benjamin and intended not to overtake Benjamin's car if I could do so." Nor did appellant, when he made the confession to the sheriff, just after his arrest, make any mention of his later claim that he had been coerced into assisting in said robbery.

We are of the opinion that the appellant had a fair trial and that the evidence was amply sufficient to justify the jury in returning a verdict of guilty against him.

The judgment is affirmed.

Hart, Acting P. J., and Plummer, J., concurred.